MADELEINE M. LANDRIEU, Judge.
hThe plaintiff, Loconte Partners, L.L.C. [“Loconte”] appeals three judgments: (1) the October 7, 2011 granting of summary judgment in favor of defendant E.R. Systems, Inc. [“ERS”]; (2) the October 26, 2011 judgment finding no liability and dismissing with prejudice the remaining defendants, namely, Tim Montgomery,[1] Montgomery and Associates, Inc., and their insurer, Landmark American Insurance Company [“Landmark”]; and (3) the December 6, 2011 judgment denying Lo-conte’s motions for judgment notwithstanding the verdict and for new trial. For the reasons that follow, we affirm the judgments.
FACTS AND PROCEEDINGS BELOW
Loconte is a limited liability company with only two members, Clay Frazier and his wife, Paula Frazier. Loconte owns two adjacent commercial buildings located at 7405 and 7407 St. Bernard Highway in Arabi, which it purchased following Hurricane Katrina. In August 2006, Loconte hired Montgomery and Associates, Inc. [hereinafter sometimes referred to as “Montgomery”] to repair the 12roof on these contiguous buildings by installing a spray polyurethane foam (SPF) roof over the existing roof, which consisted of metal decking overlaid by lightweight insulated concrete and then a modified bitumen layer. The contract included a ten-year warranty whereby Montgomery obligated itself to repair any leaks in the surfaces to which the SPF roof was applied, except for leaks due to “structural weakness, lighting, fire, tornado and damage by any third party, or other such acts beyond our [Montgomery’s] control.”
Approximately four months after the installation of the SPF roof, Mr. Frazier reported to Tim Montgomery that water was leaking into building 7407. Tim Montgomery inspected and discovered three sources of water intrusion, none of which he attributed to the SPF layer itself. The *907 three leakage sites were: (1) an opening around a conduit that protruded from the back wall; (2) the area beneath an old, non-functioning air conditioning unit that was located on the roof; and (8) a large preexisting vent in the roof that was not properly capped. Mr. Montgomery stopped the water intrusion in two of the three places by caulking the opening around the conduit and placing a plastic bag over the large vent. He also sprayed additional foam around the base of the air conditioning unit, but this action failed to cure the water leak in that area. Mr. Montgomery then secured a large tarp over the top of the air conditioning unit. There is a factual dispute between the parties as to whether the placing of this tarp stopped the roof from leaking.
On March 11, 2009, Loconte filed suit against Tim Montgomery, Montgomery and Associates, Inc., and its insurer, Landmark, alleging that [.-¡Montgomery had breached its ten-year warranty on the SPF roof by failing to repair it successfully. In July of 2010, Loconte filed a First Supplemental and Amending Petition adding ERS, the manufacturer of the spray polyurethane foam, as a defendant and alleging that ERS was liable to Loconte under the provisions of the Louisiana Products Liability Act [“LPLA”].[2] Loconte subsequently filed a Second Supplemental and Amending Petition asserting a cause of action in redhibition against all defendants.
On September 22, 2011, ERS brought a motion for summary judgment on the basis that the plaintiff lacked any evidence to show that the polyurethane foam was defective. The motion was heard on October 7, 2011, and was granted from the bench that same day.[3] The case against the remaining defendants was tried before a jury on October 10-14, 2011. At the close of the plaintiffs evidence, Tim Montgomery moved for a directed verdict as to the plaintiffs claims against him individually, which the trial court granted. At the close of trial, the jury unanimously found that Montgomery and Associates, Inc., was not negligent in installing the roof and did not breach its contract with the plaintiff. On October 26, 2011, the trial court rendered a written judgment based upon its directed verdict and the jury’s verdict, dismissing with prejudice the plaintiffs claims against all three defendants. Loconte filed motions for judgment notwithstanding the verdict and for new trial, which were denied. This appeal followed.
I ¿ISSUES
Loconte raises three issues:
(1) The trial court erred by granting summary judgment in favor of ERS four days prior to trial;
(2) The trial court committed legal error by failing to instruct the jury that “A roof which leaks is a defective roof.”
(3) The trial court erred by denying the plaintiffs motion for judgment notwithstanding the verdict.
DISCUSSION

1. Granting of Summary Judgment in favor of ERS

Loconte first argues that the trial court committed legal error by hearing and granting the motion for summary judgment only four days prior to trial, in contravention of La. C.C.P. art. 966(D), which provides:
The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall *908 be rendered at least ten days prior to trial.
Loconte cites Environmental Operators, LLC v. Natco, Inc., 2008-1183 (La.App. 4 Cir. 3/18/09), 7 So.3d 1232, in support of its argument that Article 966(D) mandates the vacating of the summary judgment. In that case, this court vacated a summary judgment that had been granted one day prior to trial, stating: “The constraint imposed by La.Code Civ. Proc. art. 966(D) is mandatory, rather than permissive.” Id., p. 8, 7 So.3d at 1237. However, in Environmental Operators, this court also recognized that it had reached the opposite result in a prior case, Bell v. Uniroyal, Inc., 96-2838 (La.App. 4 Cir. 6/11/97), 696 So.2d 268, but did not overrule that case. Instead, the Environmental Operators court impliedly distinguished Bell, noting “that this Circuit and other circuits have also come to |sdifferent conclusions, depending on the factual circumstances regarding the application of La. C.C.P. art. 966(D).” Id., p. 5, 7 So.3d at 1235. See, e.g.: Mitchell v. St. Paul Marine, 98-1924 (La.App. 4 Cir. 1/27/99), 727 So.2d 1245 (Distinguishing Bell, the court reversed summary judgment rendered one day pri- or to trial.); Johnson v. Canale, 00-891 (La.App. 5 Cir. 10/18/00), 769 So.2d 833 (The court found prejudice and vacated summary judgment rendered one day pri- or to trial.); Strong’s Plumbing, Inc. v. Leon Angel Constructors. Inc., 35,105 (La.App. 2 Cir. 10/12/01), 796 So.2d 926 (Finding no prejudice, the court affirmed summary judgment rendered three days prior to trial.).
Arguing that the trial court’s summary judgment in the present case should be affirmed, ERS specifically relies upon Bell, in which this court noted that the purpose behind the ten-day requirement of Article 966(D) is to prevent “burdening] parties with unnecessary trial preparation.” Bell, supra, p. 4, 696 So.2d at 270. Then, finding “no evidence that Bell’s case was in any way prejudiced by the two day delay,” this court declined to overturn a summary judgment that had been rendered eight (rather than ten) days prior to trial. Id.
As in Bell, we find that the record in this case contains no evidence that Lo-conte was prejudiced by the fact that the motion for summary judgment by E.R. Systems was decided four days prior to trial. The record reflects that it was one of several motions decided on October 7, 2011.[4] ERS’s motion, which asserted that Loconte could not prove its LPLA claim or its redhibition claim because Loconte lacked any evidence to show that the SPF roof was defective, was filed on September 22, 2011. Loconte’s written opposition to the motion was filed on ^September 29, 2011. In the opposition, the plaintiff raised the untimeliness of the motion’s being set for hearing on October 7, 2011 in contravention of Article 966(D), but did not argue that it was unable to effectively defend the motion because it was being heard less than ten days prior to trial. Loconte did not raise the issue of the untimeliness of the motion at the hearing itself. More importantly, Loconte failed to submit any evidence in defense of the motion on the merits, either by attaching such to its memorandum or introducing it at the hearing. In fact, when questioned (twice) by the trial judge at the hearing as to whether the plaintiff had any evidence that the product manufactured by ERS was defective, counsel for Loconte responded both times that he did not have any such evidence. Under these circum *909 stances, we cannot say that Loconte was prejudiced by the trial court’s failure to hear and decide the motion at least ten days prior to trial pursuant to La. C.C.P. art. 966(D). We therefore decline to vacate the summary judgment on procedural grounds.
Alternatively, Loconte argues that the motion for summary judgment was wrongly decided on the merits. We review the trial court’s granting of a motion for summary judgment de novo. Cressionnie v. Liberty Mut. Ins. Co., 98-0534 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, 366. La. C.C.P. art. 966 provides, in pertinent part:
[B](2) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law....
C. (1) After adequate discovery or after a ease is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
|7(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. (Emphasis added).
Loconte asserts two claims against ERS: a products liability claim under the LPLA and a claim in redhibition under La. C.C. art. 2520. To establish the liability of a manufacturer under the LPLA, the plaintiff must show: “(1) damage, that (2) was proximately caused by (3) a characteristic of an unreasonably dangerous product during (4) a reasonably anticipated use of that product. La.Rev.Stat.Ann. § 9:2800.54 (West 1991). To be unreasonably dangerous, a product must either: (a) be defective in construction, (b) be defective in design, (c) have an inadequate warning, or (d) fail to conform to an express warranty.” Pickett v. RTS Helicopter, 128 F.3d 925, 928 (5th Cir.1997).
To maintain an action in redhibition, the plaintiff must prove that the thing sold contained a hidden vice or defect, not apparent by ordinary inspection, which subsequently rendered the thing unfit for use, that the vice existed at the time of sale, and that the vendor did not advise the purchaser of it. Peters v. Pattison Pontiac Co., 259 So.2d 99, 101 (La.App. 4th Cir.1972). In addition, the defect must be of such a nature as to render the object purchased so inconvenient or imperfect that it gives rise to a presumption the buyer would not have bought it, had he known of that defect. Dupuy v. Rodriguez, 620 So.2d 397, 400 (La.App. 1st Cir.1993).
|sIn support of its motion for summary judgment, E.R. Systems submitted the deposition testimony of Tim Montgomery, and of experts Rene Dupuis, Richard Feddeck and Neil Shearer to show that the plaintiff lacked evidence that the spray polyurethane foam provided to Montgomery by ERS was defective or unreasonably dangerous. Mr. Dupuis, an expert in SPF *910 roofs, was hired by Montgomery. Mr. Feddeck, the plaintiffs expert, was qualified to give opinion testimony only as to lightweight insulated concrete roofs, not SPF roofs. Mr. Shearer is a chemist whom Mr. Feddeck consulted to perform tests on the SPF roof. None of these experts opined that the ERS product was defective. Mr. Shearer testified in his deposition that his tests showed the SPF roof to be “off ratio” in some areas, but that the person responsible for adjusting the ratio was the one who had installed the SPF roof, not the manufacturer. Mr. Dupuis stated that the physical properties of the SPF roof were good and that they comported with industry standards. He specifically stated that that his inspection and testing of the roof had revealed nothing which suggested that the ERS product was defective.
Loconte submitted no affidavits, depositions, or evidence in any form to refute that presented by ERS or to show that Loconte would be able to satisfy its burden at trial of proving that the product supplied by ERS was defective or unreasonably dangerous for normal use. Admitting at the hearing that he had no such evidence, Loconte’s counsel relied solely on his assertion that, by law, “a roof which leaks is a defective roof.” This assertion, the validity of which is addressed infra in our discussion of Loconte’s second assignment of error, is insufficient to defeat summary judgment under the facts of this case. We therefore conclude that the trial court did not err by granting summary judgment in favor of E.R. Systems.
|ag. Failure to Give Requested Jury Charge
Loconte argues the trial court committed reversible legal error by refusing to charge the jury that “a roof which leaks is a defective roof.” In submitting this jury charge, Loconte relied upon Guy T. Williams Realty, Inc. v. Shamrock Constr. Co., Inc., 564 So.2d 689, 694 (La.App. 5th Cir.1990), and Hebert v. McDaniel, 479 So.2d 1029, 1033 (La.App. 3rd Cir.1985). The transcript of the jury charge conference reflects that the trial court judge refused to give this jury charge because it sounded in strict liability, which he found was inapplicable to the facts of this case. Instead, the trial court charged the jury on the law as to negligence, breach of contract, and breach of warranty. Loconte argues that the warranty issued by Montgomery on the SPF roof created a strict liability claim on behalf of Loconte, absolving it from having to prove fault once the roof leaked. We disagree.
Whether to give a particular jury instruction is within the discretion of the court, and its decision will not be disturbed absent an abuse of that discretion. Baxter v. Sonat Offshore Drilling, Inc., 98-1054, p. 6 (La.App. 1 Cir. 5/14/99), 734 So.2d 901, 906. With regard to appellate review of this issue, this court has stated:
When deficiencies in the jury instructions are raised on appeal, this Court must look to the “gravity or degree of error and considering the instruction as a whole and the circumstances of the case.” Clarkston v. Louisiana Farm Bureau Cas. Ins. Co., 07-158, p. 23 (La.App. 4 Cir. 7/2/08); 989 So.2d 164, 181-82 (citing Seal v. State Farm Fire Cas. Co., 00-2375, p. 4 (La.App. 4 Cir. 3/20/02), 816 So.2d 868, 871-72). On appeal the jury charges presented to the jury are considered in their entirety to determine if they adequately provide the proper principles of law applicable to the issues presented in the case. Clarkston, p. 23; 989 So.2d [at] 182. A “[d]e novo review of the record is only warranted when the jury charges are so incorrect or inadequate that the jury was barred *911 from reaching a verdict based on the law and the facts.” Id. Otherwise, this Court applies the manifest error Imstandard of review to determine if the trial court erroneously omitted the requested instructions. Id. Further, this Court will not disturb a jury’s apportionment of fault unless it is clearly wrong or manifestly erroneous. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, 609-610.
Dede v. Tip’s Dev., L.L.C., 2009-0199, pp. 2-3 (La.App. 4 Cir. 7/1/09), 16 So.3d 526, 529.
In the present case, the trial court did not err by refusing to give the requested jury instruction. A review of the jurisprudence from which this instruction was taken reveals that those cases all involved building construction contracts, which legally include an implied warranty of good workmanship pursuant to Louisiana Civil Code article 2769.[5] See, e.g.: Guy T. Williams Realty, Inc. v. Shamrock Construction Co., Inc., supra; Hebert v. McDaniel, supra; Stream v. LeJeune, 352 So.2d 714, (La.App. 3rd Cir.1977); and Goudeau v. Hill, 410 So.2d 338, 339 (La.App. 4th Cir.1982). Moreover, unlike the instant case, each of those cases involved the construction of an entirely new roof or the complete replacement of a roof.
The case before us involves a contract to repair a roof by installing an SPF layer over the existing roof material. The warranty supplied by the roofing contractor, Montgomery and Associates, is a limited one, providing as follows:
This guarantee covers surfaces treated by us and binds us to repair, at our expense, any and all leaks through these surfaces for a period of Ten Years (10) (Renewable) on Material & Labor for new polyurethane foam roof systems, commencing on day of completion. Guarantee does not cover leaks due to structural weakness, lightning, fire, tornado, and damage by any third party, or |nother such acts beyond our control. Invoice for this work to be paid in full for guarantee to become effective.
Nothing in this warranty provides for the strict liability of the roofing contractor. Rather, to prove that Montgomery and Associates breached this warranty, Lo-conte must show not only that the roof leaked, but that the leak was not due to one of the causes listed above as being beyond the control of Montgomery. Therefore, the trial court properly charged the jury and correctly refused to give the charge requested by Loconte.

3. Refusal to Grant Judgment Notwithstanding the Verdict

Loconte argues that the jury verdict is not supported by the evidence and that the trial court therefore erred by refusing to grant Loconte’s motion for JNOV.
A trial court’s authority to overrule a jury’s findings and grant a JNOV is limited to situations in which the facts point so strongly in favor of the moving party that the court feels a reasonable jury could not arrive at a contrary verdict. Delaney v. Whitney Nat. Bank, 96-2144, p. 13 (La.App. 4 Cir. 11/12/97), 703 So.2d 709, 718 (citing Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991)). Where two permissible views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous. Id. (citing Schlesinger v. Herzog, 95-1127 (La.App. 4 Cir. 4/3/96), 672 So.2d *912 701). Therefore, a jury’s verdict should not be set aside as long as a fair interpretation of the evidence supports it. Id. (citing Willis v. Louisiana Power and Light, 524 So.2d 42 (La.App. 4th Cir. 1988)). All reasonable inferences from the evidence are to be construed in the light most favorable to the non-moving party. Id. (citing Egan v. Hullinghorst Indust., Inc., 587 So.2d 1226 (La.App. 4th Cir.1989)). The trial 112court’s refusal to render a JNOV can only be overturned if it is manifestly erroneous. Id., p. 10, 703 So.2d at 717 (citing Plummer v. Marriott Corp., 94-2025 (La.App. 4 Cir. 4/26/95), 654 So.2d 843, 846).
In the case before us the jury unanimously found that Montgomery did not breach its warranty or commit any negligence that caused damages to the plaintiff. Our review of the record demonstrates that the evidence clearly supports that verdict. Tim Montgomery testified that found three sources of water leakage into the building, none of which was attributable to the SPF roof he had applied. The sources of the leaks were a conduit running through the wall of the building, an inoperable air conditioning unit on the roof, and an uncapped vent. Even though each of these leaks was caused by a preexisting opening in the wall and/or underlying roof rather than by a failure of the SPF layer, Tim Montgomery was able to successfully repair each leak. Clay Frazier’s testimony confirmed that Tim Montgomery had stopped two sources of water intrusion by caulking around the opening around the conduit and by putting a plastic bag over the uncapped vent. As to the air conditioning unit, Mr. Montgomery testified that his first effort, which involved applying additional foam around the base of the unit, did not stop the leakage in that area. He further testified that the roof was damaged in September of 2008 by Hurricane Gustav, which caused a large fissure. Mr. Frazier testified that he fixed the damaged section in early 2009 even though that damage was not covered by his warranty.[6] According to Mr. Montgomery, while he was at the building, Mr. Frazier told him there was still leakage in the area of the old air conditioning unit. Mr. Montgomery re-examined the area, and determined that the |mwater was entering through the top of the unit. He then secured a rubber tarp over the top of the unit and duct taped it. Mr. Montgomery testified that he subsequently asked Mr. Frazier whether the leak had stopped, and Mr. Frazier responded that it had.
Several weeks later, however, Mr. Frazier called Mr. Montgomery and complained that the roof was leaking again. Mr. Montgomery testified that he again went to the building and determined that the water was coming through the air conditioning unit, and that the tarp had been removed. Mr. Frazier admitted that he had removed it. When questioned at trial as to why he had removed the tarp from an inoperable unit, Mr. Frazier testified that he had done so because the roof leaked with or without the tarp. This discrepancy in the testimony presented a credibility issue for the jury to resolve.
At trial, Loconte did not offer the testimony of an expert in SPF roofs to counter the testimony of Mr. Dupuis, who was an authority in that field. Mr. Dupuis testified that the only sources of water intrusion were due to preexisting mechanical penetrations through the roof rather than to any fault in the application of the SPF layer. The two experts who testified for Loconte were Mr. Feddeck, accepted as an *913 expert in lightweight insulated concrete and in roof consulting, and Mr. Shearer, an expert in chemistry. Mr. Shearer visually inspected the roof in question and testified as to the general properties of polyurethane foam. He did not testify that the roof was leaking nor did he perform any tests on the roof. None of the plaintiffs’ experts was able to refute Mr. Dupuis’s testimony.
Considering the totality of the evidence, we find that the trial court did not err by denying the plaintiffs motion for JNOV. | ^CONCLUSION
Accordingly, for the reasons stated, we affirm the judgments rendered by the trial court.
AFFIRMED

. Tim Montgomery is the sole owner/operator of Montgomery and Associates, Inc., a roofing contractor. The plaintiff's claims against Mr. Montgomery in his individual capacity were dismissed when the trial court orally granted his motion for a directed verdict. Mr. Montgomery's dismissal by directed verdict was then noted in the October 26, 2011 written judgment dismissing the remaining defendants pursuant to the jury’s verdict.

. See La. R.S. 9:2800.51, et seq.

. The -written judgment reflecting the granting of the motion was signed on October 20, 2011.

. On that date, the trial court rendered written judgments denying a motion for summary judgment brought by Tim Montgomery, in his individual capacity, and denying an exception of prescription asserted jointly by Tim Montgomery and Montgomery and Associates.

. This article, entitled "Contractor’s liability for non-compliance with contract,” provides: “If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

. Mr. Frazier admitted that Mr. Montgomery had repaired the fissure, but testified that the fissure had been caused by a collapse of the roof unrelated to Hurricane Gustav.