755 So.2d 1013 (2000)
John E. SPELLMAN
v.
Gary W. BIZAL, et al.
No. 99-CA-0723.
Court of Appeal of Louisiana, Fourth Circuit.
March 1, 2000.
*1014 John E. Spellman, Jackson, Louisiana, In Proper Person, Plaintiff-Appellant.
Gary W. Bizal, Pierce & Bizal, New Orleans, Louisiana, Counsel for Defendant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, Sr.)
BAGNERIS, Judge.
In this action for legal malpractice, the trial court granted defendants' motion for summary judgment. Plaintiff appeals. We affirm.

FACTS AND PROCEDURAL HISTORY

Underlying Suit
On March 11, 1992, John Spellman ("the plaintiff"), filed suit against Sheriff Jack Stephens, the St. Bernard Parish Sheriffs Department and St. Bernard Parish for injuries he allegedly suffered when he slipped and fell in a jail cell while he was *1015 in custody of the St. Bernard Parish Sheriff's Department. The plaintiff alleged that he fell because the floor was wet "from bad plumbing." The plaintiff further alleged that he sustained lower back injuries in this fall. The plaintiff filed this suit in proper person.
Approximately three years and four months after the plaintiff filed his suit pro se, he retained the following attorneys to represent him: Gary W. Bizal, Donald M. Pierce, and Angie M. Peraza (hereinafter, "the law firm"). On July 26, 1995, the law firm enrolled as counsel of record for the plaintiff. After completing some preliminary discovery in this matter, it was determined that the law firm could be of no assistance to the plaintiff. Consequently, the law firm wrote a letter to the plaintiff advising him that they were withdrawing as his counsel of record. In a letter dated May 19, 1997, the law firm informed the plaintiff that their firm could no longer represent him "due to an overwhelming amount of work". The law firm further advised the plaintiff that they would forward all of the discovery obtained to his new counsel once he obtained other representation.
On May 25, 1997, the plaintiff acknowledged receipt of the May 19, 1997 correspondence and requested a complete copy of his file. The plaintiff also informed the law firm that he would "prosecute" this matter himself. The plaintiff wrote the law firm again on July 27, 1997 requesting a complete copy of his file. The law firm sent the complete file to the plaintiff on August 1, 1997. A little over a week later, on August 11, 1997, the plaintiff wrote the law firm informing them that he had received his file, but that he could not proceed until the law firm filed a Motion to Withdraw as Counsel of Record. In this same letter the plaintiff asked the law firm to withdraw "as soon as possible." The law firm honored this request by mailing a copy of a Motion to Withdraw as Counsel of Record in this matter to the plaintiff on August 12, 1997. The law firm filed this Motion to Withdraw on or about August 13, 1997. The trial court[1] signed the Order permitting the defendants to withdraw as counsel on August 14, 1997.
At the time that the trial court signed the Order allowing the law firm to withdraw as counsel of record in this matter, there were no outstanding motions, and a trial date had not yet been set.
From this point forward, the plaintiff began handling this matter in proper person. The record contains several letters back and forth between the plaintiff and Mary Ann Hand, the St. Bernard Parish Sheriff's attorney. This series of letters eventually resulted in a November 7, 1997 letter in which the Sheriff's attorney agreed to a settlement of three hundred dollars ($300.00). The plaintiff signed this correspondence indicating that he agreed with the settlement. On December 19, 1997, the plaintiff executed a Receipt and Release for three hundred dollars and a Motion and Order of Dismissal.

Malpractice Suit
On May 4 1998, plaintiff filed a Petition for Damages in Civil District Court for the Parish of Orleans. This petition basically amounted to a malpractice suit against the law firm. The plaintiff alleged that the law firm was negligent in their representation. The plaintiff based his allegation of negligence on the fact that the law firm had possession of his case "for years", and they then withdrew on "bogus" grounds. The plaintiff further alleged that the law firm's negligence caused injury to him because it forced him to settle for less money than the sheriff's attorney allegedly offered the law firm at one time and "alot[sic] less than the actual demand in the original suit."
*1016 The law firm filed an Answer to this suit on July 29, 1998. In it, they argued that the plaintiff's petition failed to state a claim and a cause of action. The defendants argued that at the time of their withdrawal as counsel in the plaintiffs personal injury suit, the plaintiff had time and an opportunity to obtain other counsel and pursue the matter. Instead, they noted that the plaintiff chose to voluntarily settle his suit. They denied plaintiffs assertion that their withdrawal forced the plaintiff to settle his suit, and they averred that the plaintiff chose to settle his suit of his own free will.
On October 5, 1998, the law firm filed a Motion for Summary Judgment. A hearing on this motion was held on December 14, 1998. The trial court judge granted the law firm's Motion for Summary Judgment without assigning written reasons for her ruling.
It is from this judgment that the plaintiff now appeals.

LAW AND DISCUSSION

Summary Judgment
Appellate courts review summary judgment decisions de novo. Godfrey v. Boston Old Colony Ins. Co., 97-2569, (La.App. 4 Cir. 5/27/98), 718 So.2d 455, 457; Walker v. Kroop, 96-0618, (La. App. 4 Cir. 7/24/96), 678 So.2d 580, 583. The appellate court, like the trial court, should uphold a summary judgment decision only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issues of material fact and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Godfrey, supra; Walker, supra.
Louisiana Code of Civil Procedure article 966 was amended in 1996 to state that summary judgments are favored. The article was amended again in 1997 to clarify issues concerning the movant's burden of proof. Subparagraph C(2) of article 966 provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
LSA-C.C.P. art. 966 C(2).
This Court explicated the 1997 amendment to C.C.P. article 966 in Cressionnie v. Liberty Mut. Ins. Co., 98-0534 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, writ denied 98-1262 (La.6/19/98), 721 So.2d 476, stating as follows:
Procedurally, under the 1997 amendments to the summary judgment law, La. C.C.P. art. 966, a court's first task on a motion for summary judgment remains the same  to determine whether the moving party's supporting documents  pleadings, depositions, answers to interrogatories, admissions and affidavits  are sufficient to resolve all material factual issues. La. C.C.P. art. 966 B. If the court finds that a genuine issue of material fact exists, summary judgment must be denied. Walker, supra at 584.
However, if the court finds, based on evidence presented by the movant, that no genuine issues of material fact exist, the party opposing the motion for summary judgment is required to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La. C.C.P. art. 966(C)(2). In meeting his burden of proof, the movant is expressly *1017 not required "to negate all the essential elements of the adverse party's claim, action, or defense," but only "to point out to the court that there is an absence of factual support for one or more elements." Id. Once the movant has met his burden and the burden shifts to the party opposing the motion, the non-moving party is not allowed to rely on the allegations of his pleadings in opposition to a properly supported motion for summary judgment. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488.
Id. at 366.

Legal Malpractice
To prove a claim for legal malpractice, a plaintiff must prove: (1) there was an attorney-client relationship; (2) the attorney was negligent; and (3) that negligence caused plaintiff some loss. Couture v. Guillory, 97-2796 (La.App. 4 Cir. 4/15/98), 713 So.2d 528 writ denied 98-1323 (La.6/26/98), 719 So.2d 1287 (La.1998) (quoting Scott v. Thomas, 543 So.2d 494 (La.App. 4 Cir.1989)). In an action for legal malpractice, the plaintiff must show that the attorney failed to exercise that degree of care, skill and diligence which is exercised by prudent practicing attorneys in his locality; however, he is not required to exercise perfect judgment in every instance. Nelson v. Waldrup, 565 So.2d 1078 (La.App. 4 Cir.1990); Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972); Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109 (La.1982). The burden then shifts to the defendant attorney to prove that the client could not have succeeded on the original claim. Jenkins, supra.

Analysis
The law firm contends that the trial judge was correct in granting their Motion for Summary Judgment. Because as an appellate court we are reviewing this matter de novo, the first issue to be resolved with regard to the law firm/ Appellees' Motion is whether or not the law firm's supporting documents were sufficient to resolve all material factual issues in this case. In making this determination, one must keep in mind that LSA-C.C.P. art. 966 does not require the movant for summary judgment "to negate all essential elements of the adverse party's claim, action, or defense" but only "to point out to the court that there is an absence of factual support for one or more elements." (Emphasis Ours). Walker, supra at 584. One must also bear in mind that as a result of the amendments to LSA-C.C.P. art. 966, summary judgments are now favored as a way of avoiding the court systems' expenditure of time on meritless and frivolous litigation.
After a thorough review of the documentation submitted by the defendants in support of their Motion for Summary Judgment, we find that the defendants have met their burden of proving that there are no genuine issues of material fact in this case. In support of their Motion for Summary Judgment, the defendants attached several pieces of documentation that ultimately illustrated that they were not the cause of plaintiff's supposed "injury" in his underlying personal injury suit.
The law firm attached an affidavit in which the law firm attested to the following facts: the plaintiff retained the law firm of Pierce & Bizal to represent him in the case entitled John Spellman v. Sheriff Jack Stephens, et al; the law firm initiated preliminary discovery and determined that they could be of no assistance to the plaintiff; the law firm wrote a letter to the plaintiff on May 19, 1997 informing him that they were withdrawing as his counsel of record and advising the plaintiff to have his new attorney contact the law firm for the purpose of forwarding the plaintiff's complete file to the new attorney; the plaintiff acknowledged receipt of the May 19, 1997 correspondence and requested a copy of his file; that the defendants sent a complete copy of the file to the plaintiff on August 1, 1997; the law firm filed a Motion *1018 to Withdraw as Counsel of Record on or about August 13, 1997 and mailed same to the plaintiff on August 12, 1997; the Motion to Withdraw was signed by the court on August 12, 1997; there were no outstanding motions and no set trial date in this matter at the time of the filing of the Motion to Withdraw; the plaintiff agreed to settle his personal injury case and executed a Receipt and Release and a Motion and Order of Dismissal of this suit for the amount of three hundred dollars ($300.00) within ninety days of the law firm's filing of its Motion to Withdraw.
The law firm supported all of this with correspondence between members of the firm and the plaintiff as well as subsequent correspondence between the plaintiff and the Sheriffs attorney regarding settlement negotiations between the plaintiff and the Sheriff's attorney. The law firm also provided a copy of the Receipt and Release executed by the defendant. All of this documentation supports the law firm's assertions that it was not negligent in its handling of this matter simply because it chose to withdraw from the plaintiffs personal injury suit. The documentation also supports the law firm's assertion that there are no genuine issues of material fact, and therefore, a Motion for Summary Judgment was proper.
Because the law firm met its burden of proof on its Motion for Summary Judgment, the burden then switched to the plaintiff as the non-movant to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden of proof on his legal malpractice claim. LSA-C.C.P. art. 966 C(2). After a careful review of the record, we find that the plaintiff failed to meet this burden. In order to establish a claim for legal malpractice, the plaintiff had to prove: (1) there was an attorney-client relationship; (2) the attorney was negligent; and (3) that negligence caused plaintiff some loss. Couture v. Guillory, supra; Scott v. Thomas, supra.
There is no question that there was at one time an attorney-client relationship. That fact is not in dispute. It is the last two elements of the legal malpractice claim that provides the plaintiff with some serious difficulty. In his own Opposition, the plaintiff admits that the law firm filed "several motions for discovery and interrogatories.... prior to .... withdrawal." This indicates that the law firm did not just "sit" on the case for one year and ten months without making any effort on the plaintiffs behalf. Despite this, the plaintiff basically argues that the law firm was negligent because they withdrew as his counsel a year and ten months after they enrolled. This is well within an attorney's right, and it is not the basis of a legal malpractice claim  especially when there were no outstanding motions in the personal injury suit and a trial date had not even been set. The plaintiff had ample time within which to find new counsel to represent him in this matter. Rather than do so, the plaintiff instead chose to negotiate settlement on his own behalf with the St. Bernard Parish Sheriffs attorney and, eventually, to settle the personal injury suit for three hundred dollars.
The plaintiff argues that he sustained the following injuries and damages as a result of his former attorneys' negligence: mental anguish, emotional stress, disappointment and loss of money. For these allegations there is absolutely no supporting proof in the record. All we have is the plaintiffs statement that "if counsel would have went to trial with this matter within the (2) years that he held plaintiffs case the out-come [sic] of this case would have been different." This is purely speculative.
One of the most important "nails" in the plaintiffs "case coffin" is the fact that he did execute a Receipt and Release of all of his claims in the underlying personal injury suit. Couture v. Guillory, supra, is a case cited by the plaintiff in support of his legal malpractice claim. Unfortunately, *1019 this case has the opposite effect of supporting the law firm.
In Couture, the plaintiff, Patty Couture ("Couture"), had an underlying suit against his employer, the St. Bernard Parish School Board ("School Board"). Couture retained attorneys Vivian Guillory and Clark Roy ("Guillory and Roy") to represent him in seeking judicial review of his dismissal by the School Board. On the date that the matter was originally set for trial, the parties reached a partial compromise and settlement, whereby Couture agreed to dismiss several of his claims against the School Board in exchange for monetary compensation. In this agreement, unlike the plaintiff in our case who released all of his rights/claims against the St. Bernard Parish Sheriffs Department in the underlying personal injury suit by virtue of his execution of a Receipt and Release, Couture agreed to preserve two of his rights. Following a hearing, the trial court rendered judgment reversing the action of the School Board and reinstating Couture to his former position. The School Board appealed, and this Court reversed the trial court's judgment and reinstated the disciplinary action taken by the School Board in dismissing Couture from his employment. Couture's attorneys did not take a writ from this decision to the Supreme Court, and as a result, the Fourth Circuit's decision is now final.
Couture subsequently retained new counsel and filed a malpractice claim against Guillory and Clark for their alleged negligence in failing to seek writs from the Fourth Circuit's decision. In response, Guillory and Clark each filed a Motion for Partial Summary Judgment, arguing that as a matter of law, Couture was not entitled to recover from them damages for claims which he had previously discharged by compromise agreement executed in the underlying suit. Guillory and Clark further argued that because Couture, in this compromise agreement, dismissed his claim for loss of wages, loss of benefits, mental anguish and other general damages allegedly sustained as result of his discharge, those damages would not have been available to him even if Couture would have been successful in a writ to the Supreme Court. The trial court granted Clark and Guillory's Motions for Partial Summary Judgment.
This Court affirmed, holding that the only claims for damages that could be asserted by the client against the attorneys were those claims that were not discharged by the client prior to trial against his former employer. In our reasoning, we noted that Couture "can have no greater rights against his attorneys for the negligent handling of a claim than were available to him in the underlying claim against the School Board." Couture, supra at 532. We further stated as follows:
By the express terms of the "Restricted Release and Reservation of Rights" executed by plaintiff prior to the trial against the School Board, plaintiff discharged all of his claims for damages against the School Board, except his claim for reinstatement and his claim to seek judicial reversal of his dismissal. The words of the agreement are clear and unambiguous and this agreement has a force equal to the authority of the things adjudged. La. Civil Code art. 3078 (Emphasis ours). To the extent that plaintiff asserts claims for damages against his former attorneys in this malpractice action which were clearly discharged in the underlying suit against the School Board, we find that defendants are entitled to judgment as a matter of law dismissing these claims. (Emphasis Ours).
Id.
Because the plaintiff in this case discharged his claims for damages against the St. Bernard Parish Sheriffs Office in his underlying personal injury suit when he executed the Receipt and Release, the defendants in this malpractice action are entitled to judgment as a matter of law dismissing the plaintiffs malpractice claim. *1020 The trial court was correct in granting the law firm's Motion for Summary Judgment.

CONCLUSION
Accordingly, for the reasons assigned herein, the judgment of the trial court granting a summary judgment in favor of defendants, Gary W. Bizal, Donald M. Pierce, Angie M. Peraza and The Law Firm of Pierce & Bizal, is affirmed.
AFFIRMED.
NOTES
[1] The underlying personal injury suit was filed in the 34th Judicial District Court, Parish of St. Bernard.