866 So.2d 1085 (2004)
BROADSCAPE.COM, INC.
v.
Jones, WALKER, Waechter, Poitevent, Carrere & Denegre, L.L.P., Richard T. Gallagher, Jr., Keith M. Landry, Dionne M. Rousseau, and "ABC" Insurance Company.
No. 2003-CA-0904.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 2004.
Rehearing Denied March 16, 2004.
*1086 Robert H. Matthews and Pauline M. Warriner, Hearin & Warriner, LLC, New Orleans, LA, for Plaintiff/Appellant.
Daniel Lund, J. Scott Loeb, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, LA, for Defendant/Appellee.
*1087 (Court composed of Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge MOON LANDRIEU).
TERRI F. LOVE, Judge.
An arbitration panel rendered a judgment in the amount of $758,000, in favor of plaintiff on a breach of contract issue. The award was only a portion of the damages sought by plaintiff. Plaintiff, Broadscape.com ("Broadscape") filed a legal malpractice suit against defendants Jones, Walker, et al. ("Jones, Walker") alleging that the partial award was a result of a contract drafting error, committed by the defendants. The trial court granted Jones, Walker's motion for summary judgment. For the following reasons, we reverse the decision rendered by the trial court.
FACTS AND PROCEDURAL HISTORY
On April 30, 2001, Broadscape filed a legal malpractice suit against its former attorneys, Jones, Walker. In October 1999, Broadscape, a software company, retained Jones, Walker to draft contracts in which Broadscape and KDS, USA, the second largest monitor distributor in the country, were to enter into agreement concerning Broadscape's software. Jones, Walker drafted two contracts for Broadscape. The first contract, dated March 2, 2000, referred to as the "Rebate and Supply Agreement," was perfected. It required KDS to
(1) distribute Broadscape's Webscape software with KDS monitors modified to work with the Webscape software; and
(2) fund rebates to purchasers of those modified monitors.
The second contract, dated March 6, 2000, referred to as the "Financing, Rebate and Supply Agreement" was perfected. It required
(1) KDS to distribute Broadscape's Myscape software on a compact disc with the sale of 2,000,000 KDS monitors;
(2) KDS to provide Broadscape with financing in the amount of $900,000.00, payable in 12 monthly installments of $75,000.00 per month;
(3) Broadscape to provide KDS with the option to fund additional rebates on additional modified monitors;
(4) Broadscape to pay KDS for these requirements with Broadscape stock; and
(5) Broadscape to grant KDS exclusive rights to Broadscape's technology.
In May 2000, Broadscape initiated arbitration proceedings seeking specific performance of both contracts, alleging that KDS breached both contracts. Broadscape sought breach of contract damages based on the March 2, 2000 contract, alleging that KDS was not promoting the sale of its modified monitors with Broadscape's Webscape software. KDS's defense to this alleged breach was that Broadscape failed to supply Webscape software on time and that Broadscape failed to secure the financing it had agreed to secure.
Broadscape also sought damages for KDS's alleged breach of the March 6, 2000 contract by 1) KDS failing to distribute Broadscape's Myscape software on a compact disc with the sale of 2,000,000 KDS monitors and 2) KDS failing to pay $825,000 owed to Broadscape based on the separate portion of the March 6, 2000 contract containing the financing agreement. KDS's defense to the alleged breach of the March 6, 2000 contract, in failing to distribute the Myscape software with the sale of 2,000,000 KDS monitors, was that it and Broadscape disagreed on the substance and subject matter of that portion of the contract referring to "Software." KDS maintained that the agreement referred *1088 to Webscape software, while Broadscape maintained it referred to Myscape software. KDS maintained that the meaning of the term "Software" contained in the agreement was uncertain and susceptible to more than one reasonable meaning leaving that portion of the March 6, 2000 contract unenforceable. KDS also argued that any ambiguity in the meaning of the term "Software" should be construed against the drafter, Broadscape.
Broadscape sought damages totaling $6,117,600. The matter was submitted to arbitration and the panel awarded Broadscape $758,000, plus interest. The panel rendered judgment providing only that "KDS shall not receive any equity interest in Broadscape and this award does not represent consequential damages, which the Panel declines to award."
Broadscape, acknowledging that the judgment rendered by the arbitration panel was binding, filed a legal malpractice action against Jones, Walker as a result of its alleged negligent drafting and preparation of the supply/distribution agreement portion of the March 6, 2000 contract. Broadscape further alleges that due to the drafting error committed by the attorneys, Jones, Walker, the arbitration panel was unable to award Broadscape damages sought as a result of KDS's breach of section (1) of the March 6, 2000 contract, because that portion was unenforceable. Jones, Walker filed a motion for summary judgment, alleging there existed no genuine issue of material fact. The trial court granted Jones, Walker motion for summary judgment. It is from this judgment that Broadscape appeals.
LEGAL ANALYSIS
On appeal, Broadscape alleges that the trial court erred in granting Jones, Walker's motion for summary judgment and finding that in a legal malpractice action once the plaintiff shows the existence of an attorney/client relationship and shows negligence on the part of the defendant-attorney, the burden does not shift to the defendant to prove that the plaintiff could not have prevailed in the underlying litigation.
Appellate courts review summary judgment decisions de novo. Spellman v. Bizal, et al., 99-0723 (La.App. 4 Cir. 3/1/00), 755 So.2d 1013; Godfrey v. Boston Old Colony Ins. Co., 97-2569, (La.App. 4 Cir. 5/27/98), 718 So.2d 455, 457; Walker v. Kroop, 96-0618, (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 583. The appellate court, like the trial court, should uphold a summary judgment decision only when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law." La.Code of Civil Procedure (La.C.C.P.) article 966(B).
To prove a claim for legal malpractice, a plaintiff must prove: (1) there was an attorney-client relationship; (2) the attorney was negligent; and (3) that negligence caused plaintiff some loss. Spellman v. Bizal, et al., 99-0723, (La.App. 4 Cir. 3/1/00) 755 So.2d 1013 quoting Couture v. Guillory, 97-2796 (La.App. 4 Cir. 4/15/98), 713 So.2d 528 quoting Scott v. Thomas, 543 So.2d 494 (La.App. 4th Cir. 1989)). However, once the plaintiff establishes a prima facie case for attorney malpractice, the burden then shifts to the defendant attorney to prove that the litigation would not have been successful even if [sic] he had not negligently handled the plaintiff's case. Restrepo v. King, Jr. 569 So.2d 92 (La.App. 4th Cir.1990) citing Drury v. Fawer, 527 So.2d 423, 424 (La.App. 4th Cir., 1988). In Jenkins v. St. Paul Fire & Marine Insurance Co., et al., 422 So.2d 1109 (La.1982), the Supreme Court of Louisiana held that the third element, *1089 the plaintiff's damage was a result of the defendant attorney's negligence, can be inferred in some cases where the attorney's action of simply entering into the "attorney-client" relationship provides a small threshold of proof that there was some amount of damages sought to be recovered by the plaintiff via the skill of the attorney. Jenkins, 422 So.2d 1109 (La.1982). In Jenkins, a legal malpractice action was brought against plaintiff's former attorneys, who allegedly allowed prescription to run before filing suit on plaintiff's claim for damages for personal injuries sustained in a truck collision. The court held:
once the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit... The more logical approach is to impose on the negligent attorney, at this point in the trial, the burden of going forward with evidence to overcome the client's prima facie case by proving that the client could not have succeeded on the original claim, and the causation and damage questions are then up to the jury to decide.
Id. at 1110.
Jenkins does not dispose of the plaintiff's burden in proving all three prongs required in a legal malpractice suit. The court reasoned:
when the plaintiff proves that negligence on the part of his former attorney has caused the loss of the opportunity to assert a claim and thus establishes the inference of causation of damages resulting from the loss opportunity for recovery, an appellate court must determine whether the negligent attorney met his burden of producing sufficient proof to overcome plaintiff's prima facie case.
Id. at 1110.
The inference of causation of damages can easily be made in cases where the attorney enters into a "relationship" with a client on the premise that the client has a valid cause of action, or on a contingency fee basis. However, this inference is not automatic in all legal malpractice cases, it must be proven that the defendant-attorney's negligence caused the client a loss of the opportunity to assert a claim. Furthermore, the inference only assists the plaintiff in establishing that something of value was lost, provided that the other two prongs have been met. Spellman v. Bizal, et al., 99-0723 (La.App. 4 Cir. 3/1/00), 755 So.2d 1013.
Jones, Walker entered into the "relationship" with Broadscape for the sole purpose of perfecting two legally binding contracts between KDS and Broadscape. In no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. Abshire v. National Union Fire Insurance Co., et al., 636 So.2d 226 (La.App. 3rd Cir.1993) citing Plaquemines Par. Com'n Council v. Delta Dev., 502 So.2d 1034 (La. 1987). An attorney is obligated to exercise that degree of care, skill, and diligence, which is exercised by prudent practicing attorneys in his locality. Id. at 231. Lawyers are obligated to scrutinize any contract which they advise their clients to execute, and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it. Id. at 231. The proper method of determining whether an attorney's malpractice is a cause in fact of damage to his client, is to assess whether the performance of that act would have prevented the damage. Bauer v. Dyer, III, et al., 00-1778 (La.App. 5 Cir. 2/28/01), *1090 782 So.2d 1133, citing Ault v. Bradley, 564 So.2d 374, 379 (La.App. 1st Cir.1990).
In the case at bar, the plaintiff, Broadscape, asserts that Jenkins controls because, pursuant to the third prong as set forth in Spellman, the unenforceability of the contract resulted in their loss. As provided for in Jenkins, Broadscape asserts they loss the opportunity to assert a claim against KDS for breach of contract. Defendants Jones, Walker, assert that even if negligence is established, Broadscape cannot satisfy the third prong of Spellman, that the alleged drafting error caused the client to suffer some loss, because the arbitrators were silent as to the enforceability of the supply/distribution portion of the contract. The trial court reasoned that Jenkins does not control because pursuant to the third prong of Spellman, the evidentiary requirement that the plaintiff prove some loss was incurred as a result of the defendant-attorney's alleged negligence can never be established, solely because the arbitrators failed to provide reasons as to whether the enforceability of the supply/distribution portion of the contract was considered in the award of damages. Plaintiff asserts that pursuant to Jenkins, the burden shifts to the defendant attorney once the former client has established that an attorney/client relationship existed and that the defendant attorney was negligent. Although plaintiff misstates Jenkins, in alleging that the burden shifts to defendant upon a showing by the plaintiff that an attorney/client relationship existed and the defendant-attorney was negligent, we find Jenkins and its progeny controlling in the present case.
Jenkins provides that once the client has proved that his former attorney accepted employment and was negligent, the client has established a prima facie case that the attorney's negligence caused him some loss. It is only at this point that the court imposes on the negligent attorney
the burden of going forward with the evidence to overcome the client's prima facie case by proving that the client could not have succeeded on the original claim, and thus causation and damage questions are then up to the jury to decide.
Id. at 1110.
Jones, Walker guaranteed the work product of its attorney's ability to draft two legally binding contracts between KDS and Broadscape. The trial court held that there exists no genuine issue of material fact, because the plaintiff, Broadscape, will never be able to prove the third prong required in a legal malpractice action, that it suffered some loss as a result of the defendant-attorney's negligence. However, before the court addresses the third prong, the plaintiff must be afforded the opportunity to establish that the defendant-attorney was negligent. In following Jenkins, "causation and damages are then up to the jury to decide." Jenkins at 1110. Broadscape avers that had the supply/distribution agreement portion of the March 6, 2000 contract been enforceable, plaintiff would have been entitled to the amount it would cost Broadscape to distribute 2,000,000 units of its Myscape software on compact disc. They further allege that because KDS argued that the contract was unenforceable and the deposition testimony of plaintiff's legal expert, Richard Goins, provided that the March 6, 2000 contract was inarticulate, poorly drafted and failed to reflect the terms of the second deal between KDS and Broadscape concerning the supply and distribution of Myscape software, that the arbitration panel was unable to award Broadscape the damages it sought as a result of KDS *1091 failing to distribute the software with 2,000,000 of its monitors.
The argument of the defendants, Jones, Walker, is that no genuine issue of material fact exists because the arbitrators rendered a judgment but did not address the enforceability of the supply/distribution portion of the contract. Although this argument was accepted by the trial court, this argument requires us to pretermit the issue of the defendant-attorney's negligence. The enforceability of the contract, which was drafted by Jones, Walker on behalf of its former client, Broadscape, is a factual determination, to be determined by the trier of fact and not a matter subject to summary judgment.
La. C.C.P. article 966(B) provides that a summary judgment motion shall be granted when there exists no genuine issue of material fact. A genuine issue is a triable issue. Bauer v. Dyer, III, et al., 00-1778, (La.App. 5 Cir. 2/28/01), 782 So.2d 1133 citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2515 (La.7/5/94), 639 So.2d 730,750. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Id. citing Penalber v. Blount, 550 So.2d 577, 583 (La.1989). An attorney is liable to his client for the damages caused by the attorney's negligence in handling the client's business, providing that the client proves by a preponderance of the evidence that such negligence is the proximate cause of the loss claimed. Toomer v. Breaux, 146 So.2d 723, 726.
In the case at bar, the client submitted to the arbitrators a breach of contract claim against KDS, based on the two contracts drafted by Jones, Walker. However, KDS argued that only one portion of the contract was unenforceable due to drafting errors, and that an unenforceable contract is not legally binding unto the parties. Broadscape alleges that it loss the opportunity to assert a breach of contract claim against KDS as to the "software" supply/distribution portion of the contract.
Plaintiff has established the first prong in Jenkins, in that an attorney/client relationship existed with Jones, Walker. However to satisfy the second prong, that the defendant-attorney was negligent, requires a factual determination on the enforceability of the contract. There is a genuine issue of material fact as to whether the attorney was negligent in drafting that supply distribution portion of the March 6, 2000 contract. The plaintiff asserts that the defendant-attorney's negligence in drafting the contract resulted in their loss of the opportunity to assert a claim. The existence or nonexistence of an enforceable contract is essential to plaintiff's cause of action, therefore, making it a triable issue.
We find that the trial court erred in granting Jones, Walker's motion for summary judgment and we therefore reverse the judgment of the trial court and remand the case for further proceedings.
REVERSED AND REMANDED.