JjLEON A. CANNIZZARO, JR., Judge.
This case involves an appeal from a summary judgment dismissing the claims of the plaintiffs, Mark D. Johnson and Computer Networking Specialists, Inc., against the defendants, John T. Culotta, Kurt D. Englehardt, Joseph L. Spillman, III, William R. Seay, Jr., and Hailey, McNamara, Hall, Larmann & Papale, L.L.P. The plaintiffs are appealing the dismissal of their claims.
STATEMENT OP FACTS AND PROCEDURAL HISTORY
Computer Networking Specialists, a company in the business of selling, servicing, and offering support for computer networking hardware and software, and Mr. Johnson, the company’s owner, sued the defendants for legal malpractice. Three claims of malpractice, which are discussed below, have been asserted.
Loan Transaction
Mr. Sam Culotta was originally hired to work for the company as a sales representative, but he was soon promoted to a position in which he managed the company. According to Mr. Johnson, shortly after Mr. Sam Culotta was hired, he said that the company now had “in house counsel”, because his brother, Mr. John “Jack” Culotta, was an attorney and was available for consultation. It was Mr. Johnson’s understanding that Mr. Sam Culotta, in connection with his management |gof the company, consulted with his brother on behalf of the company whenever legal advice was needed. Mr. Johnson specifically claimed that Mr. Jack Culotta advised the company and conducted negotiations on its behalf in connection with a joint venture the company sought with another company.
Mr. Jack Culotta obtained a loan from Mr. Johnson during the time that Mr. Johnson alleged that Mr. Jack Culotta was representing the company. The loan was unsecured and was originally non-interest bearing. Mr. Jack Culotta, however, con-fected a promissory note that required in *944 terest to accrue for all but the first three months of the loan, although the interest rate was below the market rate. Because Mr. Johnson alleged that Mr. Jack Culotta was representing him and his company at the time the loan was made, Mr. Johnson also asserted that in accepting the loan, Mr. Jack Culotta violated Rule 1.8 of the Rules of Professional Conduct, La. R.S. 37, Ch. 4, Art. 16, Rule 1.8, which prohibits a lawyer from acquiring a pecuniary interest adverse to a client absent certain safeguards, which were not met in this case.
In response to Mr. Johnson’s claim that a loan was accepted by him in violation of Rule 1.8, Mr. Jack Culotta contended that he was not representing Mr. Johnson or his company when the loan was made. Mr. Culotta stated in deposition testimony that his representation of Mr. Johnson and the company began when Mr. Johnson and Mr. Sam Culotta asked him to represent them and the company in a lawsuit brought by Microsoft Corporation against Mr. Johnson, the company, and Mr. Sam Culotta. It is undisputed, however, that the loan was not repaid in full until after Mr. Jack Culotta began representing Mr. Johnson.
Although Mr. Jack Culotta tendered a check to Mr. Johnson in the amount of the below market rate interest stipulated in the promissory note, Mr. Johnson | ^refused the cheek. He has sued for interest on the note but has failed to specify the amount of interest that he seeks.
Microsoft Litigation
The second allegation of legal malpractice concerned the representation of Mr. Johnson, the company, and Mr. Sam Cu-lotta by Mr. Jack Culotta, Mr. Engle-hardt[1], Mr. Spillman, Mr. Seay, and the law firm of Hailey, McNamara, Hall, Lar-mann & Papale, L.L.P. in connection with the lawsuit filed by Microsoft. The individual defendants in the instant case were attorneys at the Hailey McNamara law firm who represented Mr. Johnson, the company, and Mr. Sam Culotta in the Microsoft litigation. In that litigation, Microsoft alleged that Mr. Johnson, the company, and Mr. Sam Culotta had infringed Microsoft’s copyrights and had profited from the infringement.
In the instant case, Mr. Johnson and the company claimed that Hailey McNamara and the named individuals who were attorneys with the firm committed legal malpractice by improperly handling the Microsoft litigation. The depositions of two lawyers, each of whom was testifying on behalf of one of the sides in this case as a legal expert, contained very different assessments of the handling of the Microsoft litigation. One of the lawyers testified that the Microsoft litigation was properly handled, and the other lawyer testified that it was not.
Additionally, Mr. Johnson and the company alleged that the third party demands that were made against the vendors, who sold the company the software that allegedly infringed Microsoft’s copyright, were settled without the approval of |4Mr. Johnson and the company. They claim that Mr. Jack Culotta settled the claims against the third party defendants without authorization on the basis of two telephone calls, one to Mr. Sam Culotta, who allegedly did not have the authority to authorize the settlement, and another to a representative of the company’s insurer. Mr. Johnson and the company contended that they were ultimately forced to sign settlement *945 agreements that they had never authorized. They based their contention on the fact that the magistrate judge before whom the settlement conference in the Microsoft case was held took the position that he had heard Mr. Jack Culotta obtain authorization by telephone to settle the third party claims.[2]
Conflict of Interest
Mr. Johnson and the company also claimed that they incurred damages, because when Hailey McNamara and its attorneys were representing Mr. Johnson and the company, they were also representing Mr. Sam Culotta in connection with a transaction in which their interests and Mr. Sam Culotta’s interests were in conflict. Specifically, Mr. Johnson and the company alleged that Mr. Englehardt gave advice to Mr. Sam Culotta in connection ■with a dispute between Mr. Sam Culotta and Mr. Johnson regarding a computer project for a school.
Allegedly, Mr. Johnson and Mr. Sam Culotta disagreed regarding how to allocate the profits from the project, and Mr. Englehardt drafted a provision pursuant to which Mr. Sam Culotta would receive all of the profits. The day after the language was drafted by Mr. Englehardt and transmitted to Mr. Sam Culotta by ejlectronicR mail, Mr. Sam Culotta left the company and started his own competing business. Shortly after he started his new business, Mr. Sam Culotta hired two key employees of the company to work for his new business, and several of the company’s customers started doing business with the new business rather than the company.
Mr. Johnson and the company alleged that by representing the interests of Mr. Sam Culotta when those interests were in conflict with the interests of Mr. Johnson and the company, Hailey McNamara and the Hailey McNamara lawyers violated Rule 1.7 of the Rules of Professional Conduct, La. R.S. 37, Ch. 4, Art. 16, Rule 1.7. That rule prohibits a lawyer from representing a client if the representation will be directly adverse to another client unless certain safeguards are met. In the instant case, those safeguards were not met. Mr. Johnson and the company alleged that they suffered damages, because there was a direct conflict between their interests and the interests of Mr. Sam Culotta.
Summary Judgment
After a hearing on the motion for summary judgment brought by Hailey McNamara and the lawyers who were sued individually, the trial court granted the summary judgment. The claims of Mr. Johnson and the company were dismissed. This appeal followed.
STANDARD OF REVIEW
In Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342 (La.1991).6 A motion for summary judgment will be granted “if the pleadings, depositions, answers to interroga *946 tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). This article was amended in 1996 to provide that “summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... ” La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows: The burden of proof remains with the mov-ant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
99-2181, 99-2257, p. 7, 755 So.2d at 230-31. See also Shelton v. Standard/700 Associates, 2001-0587 (La.10/16/01), 798 So.2d 60.
In Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, the Louisiana Supreme Court stated that “[a] fact is ‘material’ when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.” 98-2821, p. 6, 744 So.2d at 610. The Supreme Court also stated that “[fjacts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” Id. Additionally, this Court has held that “courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence” in determining what constitutes a genuine issue of material fact. Coto v. J. Ray McDermott, S.A., 99-1866, p. 4 (La.App. 4 Cir. 10/25/00), 772 So.2d 828, 830.
DISCUSSION
Legal Malpractice
In Spellman v. Bizal, 99-0723, p. 6 (La.App. 4 Cir. 3/1/00), 755 So.2d 1013, 1017, this Court stated that “[t]o prove a claim for legal malpractice, a |7plaintiff must prove: (1) there was an attorney-client relationship; (2) the attorney was negligent; and (3) that negligence caused plaintiff some loss.” The plaintiff must also show that the attorney failed to exercise the degree of care, skill and diligence which is exercised by prudent practicing attorneys in the locality where the attorney practices law. Id. The attorney is not, however, required to exercise perfect judgment in every situation. Id. Once the plaintiff establishes that the attorney has failed to exercise the proper care, skill, and diligence, the burden of proof shifts to the attorney to prove that the client could not have succeeded on the claim in connection with which the allegation of malpractice was asserted. Id. See also Johnson v. Tschirn, 99-0625, p. 4 (La.App. 4 Cir. 9/29/99), 746 So.2d 629, 632.
In Schlesinger v. Herzog, 95-1127, 95-1128 (La.App. 4 Cir. 4/3/96), 672 So.2d 701, this Court stated the following with respect to whether an ethical duty is tantamount to a legal duty in legal malpractice claims:
The defendants complain that the trial judge transformed an ethical issue into a legal duty. But on the next page of their brief defendants argue that the Louisiana State Bar Association’s Rules of Professional Conduct “have the force and effect of substantive law.” We agree. Thus, the ethical issue was transformed into a legal duty.
672 So.2d at 707 (emphasis added).
In the Schlesinger case, this Court also discussed conflicts of interest in the con *947 text of a legal malpractice action. This Court stated:
It is customary to expect one’s counsel to aggressively assert one’s rights in preference to those of another party. However, where an attorney discloses a conflict he does so to let his client know that this may not be a realistic expectation under the circumstances because the attorney may lose his objectivity without intending to do so and without even realizing it.... Therefore, a disclosure of a Isconflict is a warning that the attorney may not pursue his client’s interests with the singleness of purpose normally expected.... A wavier by the client of objection to a conflict is not a waiver of that client’s right to complain about the intentional infliction of harm by the attorney or the “obvious negligence” of the attorney to prevent such harm.
672 So.2d at 709-10
Trial Court’s Findings
In his reasons for judgment the trial court judge based his dismissal of the claims of Mr. Johnson and the company on the following findings:
1. Mr. Johnson and the company failed to establish the existence of an attorney-client relationship with Mr. Jack Culotta at the time Mr. Johnson made a loan to him;
2. Mr. Johnson’s execution of a receipt and release in connection with the third party claims in the Microsoft litigation eliminated any potential malpractice claim in connection with the unauthorized settlement of those claims by Mr. Jack Culotta;
3. there was a lack of evidence to support Mr. Johnson’s claim that any Hailey McNamara attorney had knowledge of Mr. Sam Culotta’s intention to leave the company; and
4.Mr. Johnson and the company failed to substantiate their allegations of legal malpractice.
Analysis of the Trial Court’s Findings
We disagree in part with the trial court’s findings. We find that there are several material issues of fact in this case that must be decided by a trier of fact.
| ¡¡Failure to Establish that an Attorney-Client Relationship Existed at the Time of the Loan
The trial court judge concluded that Mr. Johnson failed to establish that an attorney-client relationship existed between him and Mr. Jack Culotta at the time Mr. Johnson made the loan to Mr. Jack Culotta. Mr. Johnson claimed that when Mr. Sam Culotta was hired, he represented to Mr. Johnson that his brother, Mr. Jack Culotta, would be available to advise the company as its “in house counsel”. Mr. Johnson further claimed that he was led to believe that Mr. Jack Culotta advised Mr. Sam Culotta, the company’s manager who ran the day-to-day operations of the company, regarding legal issues affecting the company. Also, Mr. Johnson claimed that Mr. Jack Culotta did, in fact, advise the company in connection with a joint venture transaction with another company and in connection with an employment contract with one of the company’s employees. He also alleged that as compensation for his legal services, Mr. Jack Culotta received computer services provided by Mr. Sam Culotta. Mr. Johnson also testified in a deposition that the reason he offered to make an interest free loan to Mr. Jack Culotta was in consideration of the legal services he had provided.
Mr. Jack Culotta denied Mr. Johnson’s claims regarding when the legal representation of Mr. Johnson and his company began. Mr. Jack Culotta testified in his deposition that he did not represent either *948 Mr. Johnson or the company until after Microsoft filed suit against them and his brother, which was approximately seven months after Mr. Johnson made the loan to Mr. Jack Culotta.
We find that even though there may be some uncertainty regarding exactly when Mr. Jack Culotta began representing Mr. Johnson and his company, the trial court correctly granted summary judgment against Mr. Johnson and the company |1flon this issue. Mr. Jack Culotta tendered $1,221.94 in interest on the loan to Mr. Johnson, and he refused to accept it. Mr. Johnson testified as follows in his deposition:
Q. You’re currently demanding interest; is that correct?
A. Correct.
Q. How much is owed in interest?
A. I haven’t put a number on it yet.
Q. Let me show you a letter dated October 12, 2001.... This is directed to Mr. Matthews, your attorney.
Were you made aware of the fact that there was a tender of $1,221.94 in interest on the promissory note?
A. Yes.
Q. And the check was rejected; is that correct?
A. That’s correct.
Q. Why is that?
A. Because it wasn’t — I wasn’t going to accept it.
Q. Why not?
A. It wasn’t enough.
Q. How much is enough.
A. I haven’t determined that yet.
Q. Well, this was a tender based upon five percent interest.
If there was ten percent interest tended [sic] to you, would you accept that?
A. No.
Q. And in this letter, Mr. Galloway [an attorney representing Mr. Culotta]in the last sentence says, “Once again, I ask that you provide me with a dollar amount that will resolve the interest due, if any, on the $10,000 loan.”
Do you intend to respond to Mr. Galloway?
A. At this particular time, I don’t know.
Q. Why is that?
A. I haven’t made up my mind of an amount.
Mr. Culotta has not only tendered interest on the loan, he has also asked Mr. Johnson to tell him how much interest he wants him to pay. Mr. Johnson has refused to tell him. In Austin v. Abney Mills, Inc., 2001-1598, p. 7 (La.9/4/02), 824 So.2d 1137, 1160, the Louisiana Supreme Court stated that “the party still has to have some cognizable, as opposed to speculative, damages before his cause of action accrues.” Mr. Johnson’s damages are purely speculative, because he has refused to determine what his damages are. Therefore, the trial court properly granted summary judgment with respect to the issue of the loan.

Unauthorized Settlement of the Third Party Claims

The trial court judge found that Mr. Johnson and the company were precluded from asserting a claim of legal malpractice against Hailey McNamara and Mr. Jack Culotta, because Mr. Johnson ultimately executed the settlement agreement that Mr. Johnson asserted he did not authorize. There is clearly a factual dispute regarding whether or not Mr. Jack *949 Culotta had the authority to agree to settle the third party claims. However, we find that the execution of the settlement agreement by Mr. Johnson estops him from asserting a malpractice claim based on Mr. Jack Culotta’s settlement of the third party claims allegedly without proper authorization.
Mr. Johnson asserted that he felt forced to execute the settlement agreement, because the magistrate judge, before whom the settlement was negotiated, would have testified in a legal action to enforce the settlement that he had heard Mr. Jack Culotta receive authorization to settle the third party claims over the telephone. Mr. Johnson was certainly not precluded from presenting evidence in any proceeding to enforce the settlement agreement that Mr. Jack Culotta did not have authority to settle the third party claims.
La. C.C. art. 3078 provides in relevant part that “[t]ransactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion.” In Misumca v. Metropolitan Life Ins. Co., 199 La. 868, 871, 7 So.2d 167, 171 (1942), the Louisiana Supreme Court discussed a compromise agreement as follows:
The foregoing contract is free from ambiguity and speaks for itself.... [T]he plaintiff was faced with the choice of either litigating a suit ... or entering into an agreement whereby, in making certain concessions, he would avoid litigation .... He chose the latter course and cannot now retract from his solemn obligation, in the absence of fraud, duress or error of fact. He was represented by competent counsel and his action in signing the agreement was brought about after due deliberation on his part.”
Because Mr. Johnson failed to present his arguments regarding the lack of authorization for the settlement agreement in the Microsoft proceeding, and, instead, acquiesced in the settlement that had been negotiated, he is now precluded from litigating the issue of the authorization of the settlement agreement. Mr. Johnson and the company ratified the agreement that was allegedly negotiated without authorization when they executed, and thereby bound themselves to, the settlement agreement.

Knowledge of Sam Culotta’s Dispute with the Company

The trial court judge found that there was a lack of evidence to support Mr. Johnson’s claim that the Hailey McNamara attorneys had knowledge of Mr. Sam Culotta’s intention to leave the company. We find that although the Hai-ley McNamara attorneys may not have known that Mr. Sam Culotta intended to leave the company, there may still have been a conflict of interest in Hailey McNamara’s representation of both Mr. Johnson and Mr. Sam Culotta, because Mr. Johnson asserted that at least some of the attorneys at Hailey McNamara had knowledge of disagreements between Mr. Johnson and Mr. Sam Culotta. In support of his assertion, Mr. Johnson claimed that the Hailey McNamara attorneys had agreed not 11gto take sides in any disputes between Mr. Johnson and Mr. Culotta. Also, Mr. Johnson testified in his deposition that Mr. Seay told him that rumors about a disagreement between Mr. Johnson and Mr. Sam Culotta had been “floating around the office for a while.” Additionally, Mr. En-glehardt testified in his deposition that “they [Mr. Johnson and Mr. Sam Culotta] were having a disagreement and someone had told me, I think it was Mr. Seay told me that there was a disagreement.”
Mr. Englehardt, who drafted a contract provision pursuant to which Mr. Sam Cu-lotta was to receive all of the profit from a *950 computer project to be done for a school, also testified in his deposition that he originally told Mr. Sam Culotta that because the project was being done on behalf of the company, Mr. Sam Culotta would not be entitled to receive all of the profits. He further testified that he drafted the provision only after he had been told by Mr. Sam Culotta that Mr. Johnson had agreed that Mr. Sam Culotta would receive all of the profits. There is, however, no evidence that Mr. Englehardt consulted Mr. Johnson to verify what Mr. Sam Culotta had told him.
We find that there is a material issue of fact regarding the potential conflict of interest Hailey McNamara and its attorneys had in representing both Mr. Johnson and Mr. Culotta. Rule 1.7(b) of the Rules of Professional Conduct, La. R.S. 37, Ch. 4, Art. 16 provides that “[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client” unless two conditions are met. (Emphasis added.) First, the lawyer must reasonably believe that the representation will not be adversely affected. Second, the client must consent to the representation after being advised regarding the conflict. Rule 1.7(b) expressly states that “ [wjhen | ^representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.”
In the instant case, we find that there is a genuine material issue of fact as to whether the level of knowledge that the Hailey McNamara attorneys had regarding the disagreements between Mr. Sam Culotta and Mr. Johnson was sufficient to trigger the provisions of Rule 1.7(b). If so, the attorneys should have followed the mandates of that rule, and they did not do so. Because there is a genuine issue of material fact regarding the attorneys’ knowledge of the conflicting interests among Mr. Johnson, Mr. Sam Culotta, and the company, the trial court should not have granted the defendants’ motion for summary judgment on that issue.

Failure to Substantiate Claims of Legal Malpractice

Mr. Johnson and the company have alleged that Hailey McNamara’s attorneys failed to meet the standards of care for attorneys practicing law in the community in the litigation of the Microsoft case. In Bonnette v. Conoco, Inc., 2001-2767, p. 33 (La.1/28/03), 837 So.2d 1219, 1240, the Louisiana Supreme Court stated that “[t]he principle that questions of credibility are for the trier of fact to resolve applies to the evaluation of expert testimony....” Because the record contains deposition testimony of two legal experts that is clearly conflicting, there is a material issue of fact regarding whether or not the Hai-ley McNamara attorneys committed legal malpractice. Therefore, summary judgment was not appropriate regarding this issue.
CONCLUSION
We find that Mr. Johnson and the company must be given the opportunity to prove certain of their allegations in a trial of this case. A trier of fact should 11fidetermine the credibility and validity of (1) the claims and assertions that have been made with respect to the conflict of interest created by any knowledge that the Hailey McNamara attorneys might have had regarding any disputes among Mr. Sam Culotta, Mr. Johnson, and the company and (2) the legal malpractice claims against Hailey McNamara and its attorneys in connection with the Microsoft litigation other than the claims regarding the negotiation of the third party settlement agreement and the loan transaction. The trier of fact should decide from the *951 evidence presented at trial whether a preponderance of the evidence supports the allegations that have been made by Mr. Johnson and the company.
Accordingly, we affirm the judgment of the trial court granting summary judgment in this case in connection with the loan transaction and the settlement agreement with the third party defendants in the Microsoft litigation, and we reverse the judgment of the trial court granting summary judgment on the other claims presented by Mr. Johnson and the company. We hereby remand this case to the trial court for further proceedings in accordance with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. We note that Mr. Englehardt is now a federal district court judge. Because this case involves allegations of acts that occurred pri- or to Judge Englehardt’s appointment to the federal bench, we will refer to him in this opinion as Mr. Englehardt. We intend no disrespect to Judge Englehardt by such reference.

. We note that when the settlement agreements were signed in connection with the third party claims, Mr. Johnson and the company were no longer represented by Hailey McNamara or any of its attorneys. Mr. Johnson and the company signed the settlement agreements on the advice of their new counsel, who further advised that Mr. Johnson and the company could then sue Mr. Jack Culotta for legal malpractice, because his actions put Mr. Johnson and the company in the position of being forced to sign the settlement agreements.